SHEPHERD, FINKELMAN, MILLER
 & SHAH, LLP
JAMES C. SHAH
NATALIE FINKELMAN BENNETT
475 White Horse Pike
Collingswood, NJ  08107
Telephone: 856/858-1770
Facsimile: 866/300-7367
jshah@sfmslaw.com
nfinkelman@sfmslaw.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALLEN WHITAKER and RICARDO FROST, <br><br> Plaintiffs, <br><br> v. <br><br> ONTEL PRODUCTS CORPORATION, <br><br> Defendant. | No. <br><br><br> **CLASS ACTION COMPLAINT** |

Plaintiffs, Allen Whitaker ("Whitaker") and Ricardo Frost ("Frost") (collectively, "Plaintiffs"), individually and behalf of all others similarly situated, bring this action against Defendant, Ontel Products Corporation ("Ontel" or "Defendant"). Plaintiffs alleges the following based on information and belief, the investigation of counsel, and personal knowledge.

## I.    INTRODUCTION

1.      This is a class action brought by Plaintiffs, individually and on behalf of all other similarly situated consumers who purchased the Ever Brite Motion-Activated Solar Power LED Light ("Ever Brite Light(s)" or the "Light(s)") product manufactured, marketed, distributed, warranted and, in some cases, sold by Ontel.

2.       Defendant's videos, websites, and internet advertisements tout the Ever Brite Light as a premium alternative to conventional wireless solar-powered lights.  According to Defendant, the Light employs a new technology that allows it to be charged by sunlight to stay lit for 12 hours.  Ontel also promises that the Light "Never Needs Batteries," that the solar panel life span is five years, and the Lights last up to 50,000 hours.  Further, Ontel represents that the Ever Brite Light is heatproof and waterproof.

3.      Defendant's packaging similarly claims that the Ever Brite Lite is solar powered and "Never Needs Batteries."  (*See* Exhibit 1 attached hereto.)

4.      Notwithstanding Defendant's representations regarding its product, the Ever Brite Light does not work as advertised.

5.      Defendant knew, or should have known, that the Ever Brite Light does not work as advertised, is incapable of operating and performing as advertised, and is unfit for its ordinary and intended purpose as an outdoor light.

6. Moreover, Defendant knew, or should have known, that the Light has exploded and/or caught fire, which destroys the Light itself and can cause damage to surrounding property. However, Defendant actively concealed this material fact regarding the existence of a safety defect from Plaintiffs and the members of the classes (defined below).

7. Despite the receipt of hundreds of consumer complaints about the Lights, Defendant continues to market and sell the Ever Brite Lights to unsuspecting consumers throughout the United States.

8. Through this class action, Plaintiffs, on behalf of the Class, allege that Ontel's design, manufacturing, use of materials, workmanship, assembly, promotion, marketing, selling, and otherwise placing the Ever Brite Light into the stream of commerce throughout the United States with no basis for the advertising claims made about the life of the light nor any disclosure of the inherent safety defects, were unlawful, unfair, and fraudulent business practices, and breaches of Ontel's warranties.

9. Plaintiffs bring this action on behalf of themselves and all other similarly-situated consumers to stop Defendant's false and misleading advertising relating to the Lights and to obtain redress for those who have purchased them. Plaintiff alleges violations of the New Jersey Consumer Fraud Act N.J.S.A. § 56:8-1, *et seq*., ("CFA"), and breach of express and implied warranty for a nationwide

class under New Jersey law.  In the alternative, Plaintiffs allege violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law,  73 P.S. § 201-1, *et seq*. ("PUTPCPL"), and breach of express warranty and implied warranty on behalf of a Pennsylvania class and violations of the California Consumers Legal Remedies Act, Civil Code § 1750, *et seq*. ("CLRA"); the Unfair Competition Law, California Business and Professions Code § 17200, *et seq*. ("UCL");  the False Advertising Law, California Business and Professions Code § 17500, *et seq*. ("FAL"); Song-Beverly Consumer Warranty Act for Breach of Implied Warranty of Merchantability, (Cal. Civ. Code §§ 1791.1, 1792); and for breach of express warranty on behalf of a California class. Plaintiffs seek damages, restitution, equitable relief and any other available remedies for consumers who purchased an Ever Brite Light.

## II.   <u>PARTIES</u>

10.   Plaintiff, Whitaker, who purchased Ever Brite Lights, is a citizen of Pennsylvania, and a resident of the city of Pittsburgh.

11.   Plaintiff, Frost, who purchased Ever Brite Lights, is a citizen of California, and a resident of the city of Guadalupe.

12.   Defendant is a global retailer of consumer products, including "as seen on TV" consumer products that are "sold in nearly every major retail chain in the USA, and in over 30 countries worldwide." http://www.ontelproducts.com/about/.

The product development department at Ontel identifies and develops all of the company's new products, and manages the manufacturing for the company's current product lines. http://www.ontelproducts.com/about/. Ontel then markets and sells its products through infomercials, toll-free numbers, proprietary websites, online retailers such as Amazon, and traditional retailers, such as Walgreens and Rite-Aid.

13.    Ontel is a privately-held company with its principal place of business and headquarters located at 21 Law Drive, Fairfield, Essex County, New Jersey, and it is, therefore, a citizen of New Jersey.

## III.   JURISDICTION AND VENUE

14.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

15.    This Court also has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because at least one class member is of diverse citizenship from Defendant; there are more than 100 class members nationwide; and the aggregate amount in controversy exceeds $5,000,000.

16.    This Court has personal jurisdiction over the parties because Defendant is headquartered in this District, conducts substantial business in this District, has systematic and continuous contacts with this District, and has agents and representatives that can be found in this District.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Defendant is a resident of this judicial district, does business throughout this District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims took place within this District.  This Court, accordingly, has jurisdiction over this action and venue is proper in this District.

## IV.    FACTUAL ALLEGATIONS

### The Deceptive Marketing Campaign

18.     Defendant manufactures and markets the Ever Brite Light, and sells the Light through its "As Seen On TV" websites, using infomercials and videos, and through traditional retailers, such as Amazon, Dollar General, and Walmart.

19.     Defendant markets the Ever Brite Light as an effective and long lasting solar powered light.  Specifically, Defendant represents the following:

- Everbrite is a motion activated SOLAR outdoor LED light. Illuminate like never before!

- Lasts up to 100,000 hours

- Rain Proof, Solar Powered and Motion Activated

- Requires no Bulbs or Batteries

- Under "Product Description," Ontel states that:

    When it comes to Outdoor lighting, you're either running power cables up walls or changing out batteries. Who wants mess with that?

> Ever Brite is a motion-activated outdoor LED light that is durable and weather proof. This super bright solar-powered light never needs batteries and features peel & stick mounting with no tools or wiring required. Ever Brite features auto on/off and a motion sensor that increases brightness when motion is detected.
>
> No cords. No changing batteries. No replacing bulbs. The internal LED light lasts a lifetime, and since Ever Brite charges itself using a built-in solar panel, there are no batteries to replace.

https://www.asseenontvlive.com/product/ever-brite/.

20.     The website, www.asseenontvlive.com, sets forth its "corporate address" as As Seen On TV, Inc., 21 Law Dr., Fairfield, New Jersey, which is the same address as Defendant.

21.     The www.asseenontvlive.com website sets forth a "List Price" of $19.99, which has a line drawn through it, and then sets forth a sale price of $12.94.

22.     Similarly, the Ever Brite Light is also sold on www.asseenontvexpress.com/products/ever-brite.  This website sets forth a "List Price" of $19.99, which has a line through it, and then sets forth a sale price of $12.95.  According to this website, "Ever Brite is a motion-activated outdoor LED light that is durable and weather proof.  This super bright solar-powered light never needs batteries and features peel & stick mounting with no tools or wiring required. Ever Brite features auto on/off and a motion sensor that increases brightness when motion is detected. No cords. No changing batteries. No replacing

bulbs. The internal LED light lasts a lifetime, and since Ever Brite charges itself

using a built-in solar panel, there are no batteries to replace."



23.     There is a video link available that sets forth a short video advertising

the product, which sets forth the same advertising message:

> [NARRATOR] When it's dark at night and it's hard to see,
> there's never a light where it's supposed to be.  And
> installing a light by the steps or door can be quite a chore.
> But not anymore.  Introducing EverBrite, the new wireless
> solar powered light that turns on at night.  EverBrite shines
> an attractive low-level light from dusk til dawn and the
> built-in motion sensor turns up the light as you approach.
> Then automatically dims it when you walk away. This
> state-of the-art sensor detects movement from up to twelve
> feet away.  And EverBrite is solar-powered so there are no
> bills to pay.  This new solar cell technology charges the
> lithium ion battery during the day then keeps EverBrite lit
> for up to 12 hours at night.  Look…just peel and stick.
> EverBrite's  construction-grade  adhesive  mounts  in
> seconds to virtually any surface…brick and stucco,
> shingles and siding, and more!  No wires, no tools.  Now
> you can put a light wherever you like.  Go from this, to
> this with EverBrite.  Hang it over the door so you see your
> way in.  Brighten up that dark walkway or your path, or
> light up those steps so you're safe and secure.  Great for
> the garage, super on a shed.  The heavy grade construction

is durable and waterproof and the super–bright LED bulbs last a lifetime.  EverBrite shines bright when you approach and dims when you walk away.

https://www.asseenontvlive.com/product/ever-brite/.

24.    In addition, the Light is advertised on Amazon with the same

message:

- JUST PEEL & STICK! – Sticks to virtually any surface and works almost anywhere around the house
- ADD LIGHT AND VISIBILITY! - To your outdoors easily. Illuminate outdoor areas like never before
- MOTION SENSOR! – When motion is sensed, Ever Brite increases in brightness
- NO WIRRING OR TOOLS NECESSARY! – Peel & stick on brick, stucco, shingles, siding, plastic, metal, wood, glass and more!
- SOLAR ENERGY POWERED! – Solar panel lasts up to 5 years / LED bulbs 100,000 hours

https://www.amazon.com/ONTEL-Brite-Motion-Activated-Outdoor/dp/B075YBM644/ref=sr_1_10?keywords=everbrite&qid=1549901797&s=gateway&sr=8-10.

25.    The actual product package (Exhibit 1) and package insert (Exhibit 2

attached hereto) make similar claims regarding the operation, durability and

attributes of the product, including the Light is "Super Bright!" and "Never Needs

Batteries!"  The battery is listed as a 600 mAH lithium ion battery.

26.    The package insert also states that the Light is heatproof, waterproof,

has a built-in motion sensor and dimmer, and has a life span of five years for the

solar panel, and 50,000 hours for the LED lights.  Also, according to the package

insert, "during daylight hours, Ever Brite will charge the internal battery through

the solar panel."  Then, at dusk, "your Ever Brite will automatically switch from CHARGING MODE to LIGHT MODE and the LED lights will turn on."

27.    Plaintiffs and class members viewed and relied on Defendant's marketing materials and/or product labels prior to purchasing Ever Brite Lights, and believed Defendant's representations regarding the product's durability, longevity and performance to be true.  Plaintiffs each attempted to use the Light according to the instructions on the package insert, but the Lights did not operate as promised.

**The Ever Brite Light is Unsafe and Does Not Perform as Advertised**

28.    Beginning in 2016, there have been several news reports of the Ever Brite Light spontaneously catching fire. https://www.abc57.com/news/fire-officials-say-some-outdoor-lights-are-causing-fires;

https://www.wabi.tv/content/news/Close-Call-Solar-Light-Catches-Fire-on-Mariaville-Couples-Garage-475872713.html.

29.    One fire department in South Euclid Ohio has publicly stated that its investigation determined that the explosion was due to the battery becoming overloaded and exploding.  https://fox8.com/2017/05/12/investigators-find-exploding-battery-behind-solar-light-fires/.  However, Defendant does not disclose the existence of the safety hazard.

30.    In addition, complaints about the Lights catching fire have been made to the Consumer Product Safety Commission and, although Ontel receives notice of

such complaints, it has not publicly indicated that it has made any investigation of the Lights based on the complaints.

31.     Defendant was and is under a continuing obligation to disclose the unsafe and defective nature of the Lights to consumers, but, instead, continues to fraudulently market and sell the product.

32.     Contrary to Defendant's representations, the Ever Brite Lights are incapable of operating as promised and are often either inoperable out of the box or work for only a few days or weeks.  Ever Brite Light purchasers have attempted to use the product only to learn that Defendant's aggressive marketing claims are false and intended to fool them into buying the Light, which does not perform as advertised.   A number of internet blogs and other websites publish consumer complaints describing the exact same performance issues as those suffered by Plaintiffs and the classes as described herein.

33.     For example,  there are numerous complaints on Amazon regarding the Light:

> Kindle Customer
> **Ever Brite unit will not work for me after following the instructions for its use.**
> March 12, 2018
> Purchased Ever Brite over a month ago, and followed directions for its use. I placed unit on south side of my home and the unit will not light the area I mounted it in. While the weather is a bit on the cold side, the unit has received plenty of daylight to charge the unit. I am very unhappy with the purchase of this item.

\* \* \* \* \*

&#34;Cousin&#34; Rich Allison
December 24, 2017
FAILED TO WORK FOR ME! SAVE YOUR MONEY!

\* \* \* \* \*

Corporate Lady
February 28, 2018
This item did not work.

\* \* \* \* \*

dov patel
 March 2, 2018
 didnt work. refund please have customer service contact me

\* \* \* \* \*

Amazon Customer
March 26, 2018
Excellent condition fast delivery not such a great product.... very low light. Not enough to make a difference

\* \* \* \* \*

E. Strout
**Waste of money**
January 30, 2018
Does not work at all. Left in sun for 24 hours, mounted on building (with screw, tape strip doesn't work at all.) Did not light up for even a minute. Waste of money. Total junk.

\* \* \* \* \*

https://www.amazon.com/ONTEL-Brite-Motion-Activated-Outdoor/dp/B075YBM644/ref=sr_1_10?keywords=everbrite&qid=1549910627&s=gateway&sr=8-10.

34.     Similarly, there are numerous complaints on a website called Ever-Brite.pissedconsumer.com.  For example:

"Recieved [sic] 2 pack from Groupon neither one worked at all"

* * * * *

"Bought the everbrite been out for 2 1/2 days still as not worked"

* * * * *

"Found 1 light with 'fried' solar panel today 7/7/2018. Had 26 of these in my yard - posted on wood fence to light dark pathways at night. I removed the other 25 and when I did I discovered more with 'fried' solar panels."

* * * * *

"Safety Hazards! EXPLODES! Starts Fires.This is a very dangerous equipment that exploded and flew of my garage causing a loud bang.

The product exploded and started a fire behind my garage.

The lawn behind my garage was burning, I [sic] blew off the building and put us at great risk We use these lights around our privacy fence, our garage and patio areas"

* * * * *

"Ordered 2 lights, they never once have turned on. Instead of everbrite, i call them neverhavelight. Have sent many emails to company and have gotten ZERO response"

* * * * *

"I brought the light on April 3, 2018. From homedepot. The light last 5 days. Have not work [sic] since. The light cost 13.00 and some change."

\* \* \* \* \*

"Bought 2 as seen on tv. Mounted on open patio and enjoyed how well they worked but didn't last but about 4 months. When they were working well I purchased another from pch. This unit didn't work at all. So expected it to work as well as the first 2 units did when new."

\* \* \* \* \*

"I got a Ever Brite last month and it dosent [sic] work at all."

35.    Defendant's fraudulent, deceptive and unfair practices have caused, and continue to cause, to Plaintiffs and Class members, significant out-of-pocket loss in the amount of the price paid for this defective, unsafe and inoperable product.

**Factual Allegations Relating To Plaintiffs**

36.    Whitaker purchased several Ever Brite Lights in the fall of 2018 in a Dollar General store in Coraopolis, Pennsylvania, for approximately $12.00 per Light. He chose to purchase the Light based on Defendant's advertisements and labeling touting the Light's features and quality, which he had seen and relied upon, as Defendant intended.

37.    Whitaker would not have purchased his Ever Brite Lights but for Defendant's false representations or if he had known that Defendant had concealed material information that the Light does not work as represented; that the battery does not last indefinitely; that the LED panels do not last as promised; that the bulbs do not last as represented; and also that the Ever Brite Lights have a defect that can

cause them to burst into flames.  As such, Defendant's representations concerning the Light were untrue.

38.    Soon after his purchase of the Lights, Whitaker turned them on and put them on a window ledge outside to charge.  They did not work.  Whitaker posted on his Facebook page about the failed and inoperative Lights and soon received a telephone call from Defendant offering him new Ever Brite Lights; Whitaker does not know how Ontel obtained his personal information.  He declined the offer, but Ontel mailed new Lights to him anyway, despite his declination.  Whitaker turned on the new Ever Brite Lights and put them outside to charge, but found them to be similarly inoperable.

39.    Frost purchased several Ever Brite Lights in the fall of 2018 as he was having a party at his home. He purchased a Light at a Ross store near his home, but the Light was inoperable out of the packaging.  He chose to purchase the Light based on Defendant's advertisements and labeling touting the product's features and quality, which he had seen and relied upon, as Defendant intended.

40.    Frost would not have purchased his Ever Brite Lights but for Defendant's false representations or if he had known that Defendant had concealed material information that the Light does not work as represented; that the battery does not last indefinitely; that the LED panels do not last as promised; that the bulbs do not last as represented; and also that the Ever Brite Lights have a defect that can

cause them to burst into flames.  As such, Defendant's representations concerning the Lights were untrue.

41.   Had Ontel not engaged in its fraudulent and deceptive actions, Plaintiffs and the class would not have purchased the Lights, or would have paid less for the Lights.

42.   As a result of Ontel's fraudulent and deceptive actions and practices, Plaintiffs and class members have suffered actual and particularized injury, including ascertainable loss and injury in fact, because the Lights do not work as promised.

## V.   CLASS ACTION ALLEGATIONS

43.   This action is brought, and may be properly maintained, as a class action under Rule 23 of the Federal Rules of Civil Procedure.  All requisite elements of Fed. R. Civ. P. 23(a) and 23 (b) (3) are satisfied; there is a well-defined community of interests in the litigation; the proposed class and any subclasses are ascertainable; and a single class action is the superior manner in which to proceed when compared to the joinder of hundreds of thousands of plaintiffs or tens of thousands of individual cases challenging the same practices.

44.   Plaintiffs brings this class action on behalf of themselves, and under the provisions of Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, as a class action on behalf of the following nationwide class pursuant to New Jersey law:

> All persons or entities in the United States who purchased an Ever Brite Light, not for resale ("the "Nationwide Class").

45.     Plaintiffs allege, in the alternative, state-wide class action claims on behalf of the following state subclasses. Each of these state classes (the "State Classes") is defined as follows:

> All persons or entities in the Commonwealth of Pennsylvania who purchased an Ever Brite Light in Pennsylvania, not for resale ("Pennsylvania Class").

> All persons or entities in the State of California who purchased an Ever Brite Light in California, not for resale ("California Class").

46.     The Nationwide Class, Pennsylvania Class, the California Class, and their members, are referred to collectively herein as the "Class" or the "Classes."

47.     The Class Period for the Classes dates back to the longest applicable statute of limitations for any claims asserted on behalf of that Class from the date this action was commenced, and continues through the present and to the date of judgment.

48.     Excluded from the Classes is Defendant, its current employees, co-conspirators, officers, directors, legal representatives, heirs, successors, and wholly- or partly-owned subsidiaries or affiliated companies; the undersigned counsel for Plaintiffs; anyone with personal injury claims; and the Judge and Court staff to whom this case is assigned.  Plaintiffs reserve the right to amend the definition of

the Classes if discovery or further investigation reveals that they should be expanded or otherwise modified.

49.    This action satisfies the predominance, commonality, typicality, numerosity, superiority, adequacy, and all other requirements of Rule 23 of the Federal Rules of Civil Procedure.

50.    <u>Numerosity</u>: The members of the Classes are so numerous that joinder of all members is impracticable. The precise number of members is unknown at this time, but Defendant has sold tens of thousands of the Lights throughout the United States.  The precise number of Class members can be ascertained by reviewing Defendant's records.

51.    <u>Commonality and Predominance</u>: Common question of law and fact exist as to all members of the Classes, and predominate over any questions that affect only individual members of the Class.  Plaintiffs' claims and the claims of the proposed Class members all derive from a common nucleus of operative facts, and, irrespective of the individual circumstances of any proposed Class member, liability in this matter will rise and fall with core issues related to Defendant's conduct. Common legal and factual questions include, but are not limited to, the following:

     a. Whether Defendant engaged in a pattern of fraudulent, deceptive, and misleading conduct targeting the public through its marketing, advertising, promotion and/or sale of the Ever Brite Lights;

     b. Whether Defendant made material misrepresentations of fact or omitted to state material facts to Plaintiffs and the Class regarding

the efficacy and attributes of the Ever Brite Lights, and the safety of the Lights, which material misrepresentations or omissions operated as a fraud and deceit upon Plaintiffs and the Class;

c. Whether Defendant's false and misleading statements of fact and concealment of material facts regarding the efficacy and attributes of the Ever Brite Lights were intended to deceive the public;

d. Whether Defendant's conduct violated state consumer statutory provisions;

e. Whether Defendant breached its warranties with Plaintiffs and the Class;

f. Whether, as a result of Defendant's misconduct, Plaintiffs and the Class are entitled to equitable and other relief, and, if so, the nature of such relief; and

g. Whether Plaintiffs and the members of the Class have sustained loss and damages, including suffering ascertainable loss, as a result of Defendant's acts and omissions, and the proper measure thereof.

52.    Typicality: Plaintiffs' claims are typical of the claims of the members of the Classes to which they belong.  Plaintiffs and all Class members were subjected to Defendant's common business practices, as described above, and assert common legal claims that are typical of those of the Classes.  Plaintiffs and members of the Classes have sustained damages arising out of Defendant's wrongful and deceptive conduct as alleged herein. Resolution of the common issues presented by Plaintiffs will resolve them in a common and typical manner for other members of the Classes.

53.    Adequacy: Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent; they have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously in the best

interests of the Class.  The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

54.    <u>Superiority</u>: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is economically infeasible and procedurally impracticable.  Furthermore, the expense and burden of individual litigation make it difficult or impossible for members of the Class to individually redress the wrongs done to them.  Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation presents the potential for inconsistent or contradictory judgments.  There will be no difficulty in the management of this class action.  A class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

55.    A class should also be certified under Fed. R. Civ. P. 23(b)(2). Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes.

56.    In the alternative, the Classes may be certified under Fed. R. Civ. P. 23(c)(4) with respect to particular issues.

## VI.   CLAIMS FOR RELIEF

### COUNT I
### Violations of New Jersey Consumer Fraud Act ("CFA")
### N.J.S.A. § 56:8-1, *et seq*.
### (On Behalf of the Nationwide Class)

57.     Plaintiffs reallege and incorporate each allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

58.     The CFA was enacted and designed to protect consumers against unfair, deceptive and fraudulent business practices. N.J. Stat. Ann. §56:8-1, *et seq*.

59.     N.J. Stat. Ann. §56:8-2 provides:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . .

60.     Plaintiffs, other members of the Class, and Defendant are "persons" within the meaning of the CFA.

61.     The Lights are "merchandise" within the meaning of the CFA, and Plaintiffs and other members of the Class are "consumers" within the meaning of the CFA and, thus, are entitled to the statutory remedies made available in the CFA.

62.     Ontel, through its labels, advertisements and videos regarding the Lights' attributes, including quality, lifespan and warranties, used unconscionable commercial practices, deception, fraud, concealment, false promises, and misrepresentations, in violation of the CFA, in connection with the marketing and sale of the Ever Brite Lights.

63.     Ontel also knowingly concealed, suppressed, and consciously omitted material facts to Plaintiffs and other Class members regarding the unsafe nature of the Lights and the fact that many of them have caught on fire.

64.     These acts and omissions directly and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, money spent purchasing the Lights and other out-of-pocket expenses, together with appropriate penalties, including treble damages, attorneys' fees, and costs of suit.

65.     The CFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

## COUNT II
## Breach of Express Warranty Under New Jersey Law
## (On Behalf Of The Nationwide Class)

66.     Plaintiffs reallege and incorporate each allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

67.     Defendant is a "merchant" as defined by the relevant statutes.

68.     The Lights are "goods" as defined by the relevant statutes.

69.     As described herein, Ontel expressly warranted that the Light operates as advertised, that it "Never Needs Batteries" and that the Light's solar panels and LEDs will last for at least five years.  That promise served as the basis of the bargain between the parties and therefore constituted an express warranty.

70.     Defendant intended that consumers would rely on those warranties when purchasing the Lights.

71.     On the basis of the representations, Plaintiffs and Class members agreed to purchase the Lights.  An express warranty therefore became part of the basis of the bargain.

72.     Plaintiffs and the Class have performed all conditions, covenants, and promises required on their part to be performed.

73.     The goods Plaintiffs and the Class received did not conform to the express warranty as alleged above, in that the Ever Brite Lights did not operate as advertised and labeled, the battery does not last indefinitely, the LED panels do not last as promised, and the bulbs do not last as represented.

74.     Had Defendant disclosed the truth about the Lights, including that the Light can catch fire, Plaintiffs and Class members would not have purchased the Lights or not have been willing to pay as much for them.

75.     Defendant has failed to replace the non-conforming goods with goods conforming to Defendant's express warranty as to Plaintiffs and the Class, or to compensate Plaintiffs and the Class.

76.     Ontel is aware of the breach of warranty and even had a representative call Whitaker to try to send new Lights, and did send new Lights, which also failed to operate.

77.     Defendant was also provided notice of its breach of express warranty through its own knowledge of the safety issues and other problems with the Lights, including from complaints to the Consumer Product Safety Commission and to its own customer service department.

78.     As a direct and proximate result of Defendant's breach of express warranty, Plaintiffs and the Class have been damaged in an amount to be proven at trial.  The precise amount of these damages is unknown at the present time but is in excess of the jurisdictional limits of the Court.

**COUNT III**
**Breach of Implied Warranty Under New Jersey Law**
**(On Behalf Of The Nationwide Class)**

79.     Plaintiffs reallege and incorporate each allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

80.     Defendant is a "merchant" as defined by the relevant statutes.

81.     The Lights sold to Plaintiffs and members of the Class are "goods" as defined by relevant statutes.

82.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that the Lights were of merchantable quality and, among other warranties, that the Lights would pass without objection in the trade or industry, and were and are fit for the ordinary purpose for which solar lights are used, such as being placed outdoors and shining light, not causing spontaneous fires.

83.     The Lights, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which solar powered outdoor lights are used.

84.     The Light does not work as represented, the battery does not last indefinitely, the LED panels do not last as promised, the bulbs do not last as represented, and the Ever Brite Lights have a defect that can cause them to burst into flames.

85.     Ontel breached its implied warranties by selling, marketing, and manufacturing the Lights that do not work and carry the risk of fires, as discussed herein.

86.     The Lights were manufactured defectively, and delivered to consumers as such. Therefore, they were defective immediately upon purchase or when they

left the exclusive control of Defendant, and Defendant has breached the implied warranty of merchantability with respect to Plaintiffs and Class members.

87.     Defendant was provided notice of its breach through its own knowledge of the complaints about the product, the instant Complaint, and communications transmitted by Plaintiffs and the Class.

88.     As a direct and proximate cause of Defendant's breach of implied warranties, Plaintiffs and Class members have sustained damages, including economic loss equal to the purchase price of the Lights, and the difference in value between the Lights as warranted and as actually sold.

**COUNT IV**
**Violations of 73 P.S. § 201-1, *et seq*.,**
**Pennsylvania Unfair Trade Practices And Consumer Protection Law**
**(Alternatively, On Behalf Of The Pennsylvania Class)**

89.     Plaintiffs reallege and incorporate each allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

90.     Under Section 201-3, the PUTPCPL prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  73 Pa. Stat. Ann. § 201-3.

91.     Among other things, the PUTPCPL prohibits "[e]ngaging in any other Fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding."  73 Pa. Stat. Ann. § 201-2(4)(xxi).

92.     The PUTPCPL authorizes a claim by any person who made a "purchase" "primarily for personal, family, or household purposes." *Id*. at § 201-9.2(a).   Whitaker's purchases were for personal purposes and fall under the protections of the PUTPCPL.

93.     Defendant's conduct as described above constitutes an unfair method of competition and deceptive conduct.

94.     Defendant engaged in unfair, unlawful, and deceptive acts in trade and commerce which have the capacity and tendency to deceive and did deceive Whitaker and the Pennsylvania Class members and damaged Plaintiff and the Pennsylvania Class members.

95.     Defendant represented that its Ever Brite Lights would be "Super Bright" and "Never Need Batteries" and that the Lights would work; however, the Light does not work as represented, the battery does not last indefinitely, the LED panels do not last as promised, the bulbs do not last as represented, and the Ever Brite Lights have a defect that can cause them to burst into flames.

96.     Defendant wrongfully concealed, suppressed, and omitted to disclose that that the Lights do not operate and that they are unsafe and can catch on fire.

97.     Whitaker and the Pennsylvania Class have suffered injuries and damages in an amount to be proven at trial.

## COUNT V
## Breach of Express Warranty Under Pennsylvania Law
## (<u>On Behalf Of The Pennsylvania Class</u>)

98.     Plaintiffs reallege and incorporate each allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

99.     Defendant is a "merchant" as defined by the relevant statutes.

100.    The Lights are "goods" as defined by the relevant statutes.

101.    As described herein, Ontel expressly warranted that the Light operates as advertised, that it "Never Needs Batteries" and that the solar panels and LEDs will last for at least five years.  That promise served as the basis of the bargain between the parties and therefore constitutes an express warranty under 13 Pa.C.S.A. § 2313.

102.    Defendant intended that consumers would rely on those warranties when purchasing the Lights.

103.    On the basis of Defendant's representations, Whitaker and Pennsylvania Class members agreed to purchase the Lights.  An express warranty, therefore, became part of the basis of the bargain.

104.    Whitaker and the Pennsylvania Class have performed all conditions, covenants, and promises required on their part to be performed.

105.    The goods Whitaker and the Pennsylvania Class received did not conform to the express warranty as alleged above, in that the Ever Brite Lights did

not operate as advertised and labeled, the battery does not last indefinitely, the LED panels do not last as promised, and the bulbs do not last as represented.

106.   Had Defendant disclosed the truth about the Lights, including that the Light can catch fire, Whitaker and Pennsylvania Class members would not have purchased the Lights, or would not have been willing to pay as much for them.

107.   Defendant has failed to replace the non-conforming goods with goods conforming to Defendant's express warranty as to Whitaker and the Pennsylvania Class, or to compensate Whitaker and the Pennsylvania Class.

108.   Ontel is aware of the breach of warranty and even had a representative call Whitaker to try to send new Lights, which also did not operate.

109.   Defendant was also provided notice of its breach of express warranty through its own knowledge of the safety issues and other problems with the Lights, including from complaints to the Consumer Product Safety Commission and to its own customer service department.

110.   As a direct and proximate result of Defendant's breach of express warranty, Whitaker and the Pennsylvania Class have been damaged in an amount to be proven at trial.  The precise amount of these damages is unknown at the present time but is in excess of the jurisdictional limits of the Court.

## COUNT VI
## Breach of Implied Warranty Under Pennsylvania Law
## (On Behalf Of The Pennsylvania Class)

111.   Plaintiffs reallege and incorporate each allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

112.    Defendant is a "merchant" as defined by the relevant statutes.

113.    The Lights sold to Whitaker and members of the Pennsylvania Class are "goods" as defined by relevant statutes.

114.    Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that the Lights were of merchantable quality and, among other warranties, that the Lights would pass without objection in the trade or industry, and were and are fit for the ordinary purpose for which solar lights are used, such as being placed outdoors and shining light, not causing spontaneous fires.

115.   The Lights, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which solar powered outdoor lights are used, pursuant to 13 Pa.C.S. § 2314.

116.   The Light does not work as represented; the battery does not last indefinitely; the LED panels do not last as promised; the bulbs do not last as represented; and the Ever Brite Lights have a defect that can cause them to burst into flames.

117.   Ontel breached its implied warranties by selling, marketing, and manufacturing the Lights that do not work and carry the risk of spontaneous fires, as discussed herein.

118.   The Lights were manufactured defectively, and delivered to consumers as such. Therefore, they were defective immediately upon purchase or when they left the exclusive control of Defendant, and Defendant has breached the implied warranty of merchantability with respect to Whitaker and Pennsylvania Class members.

119.   Defendant was provided notice of its breach through its own knowledge of the complaints about the product, the instant Complaint, and communications transmitted by Whitaker and the Pennsylvania Class.

120.   As a direct and proximate cause of the Defendant's breach of implied warranties, Plaintiff and Pennsylvania Class members have sustained damages, including economic loss equal to the purchase price of the Lights, the difference in value between the Lights as warranted and as actually sold.

**COUNT VII**
**Violation of Consumers Legal Remedies Act –**
**California Civil Code § 1750, *et seq*.**
**On Behalf of the California Class**

121.   Plaintiffs reallege and incorporate each allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

122.   This cause of action is brought under the CLRA.   Frost and the California Class are consumers as defined by California Civil Code § 1761(d), and the Lights constitute goods within the meaning of the CLRA.

123.   The following deceptive practices proscribed by California Civil Code § 1770(a) in connection with transactions intended to result in, and did result in, the sale of the Lights to Frost and members of the California Class in violation of, *inter alia*, the following provisions:

      a)     Representing that the goods have characteristics, uses, or benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

      b)     Representing that the goods are of a particular standard, quality, or grade if they are of another (Cal. Civ. Code § 1770(a)(7));

      c)     Advertising goods with the intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9));

      d)     Representing that a transaction involves rights, remedies, or obligations that it does not have or involve (Cal. Civ. Code § 1770(a)(14)); and

      e)     Representing that the goods have been supplied in accordance with a previous representation when they have not (Cal. Civ. Code § 1770(a)(16)).

125.   Frost and other California Class members, in purchasing and using the Lights, did reasonably act in response to Defendant's above representations or would have considered the omitted facts set forth herein material to their purchasing decision.   Frost and the California Class have suffered damages by the wrongful acts and practices of Defendant that are in violation of California Civil Code § 1781.

126.   The representations regarding the Lights were material to Frost and members of the California Class.  Defendant intended that Frost and California Class members would rely on these representations and they did, in fact, rely on the representations.

127.   In accordance with California Civil Code § 1780(a), Frost and the Class seek injunctive relief for Defendant's violations of the CLRA.

128.   Frost seeks for himself and the California Class injunctive relief under the CLRA and also to recover attorneys' fees and costs pursuant to California Civil Code §§ 1780 and 1781.

## COUNT VIII
### False and Misleading Advertising in Violation of California Business and Professions Code § 17500, *et seq*.
### On Behalf of the California Class

129.   Plaintiffs incorporate by reference each and every preceding paragraph as though fully set forth herein.

130.   Defendant's acts and practices as described herein have deceived and/or are likely to deceive members of the California Class and the public.  Defendant has advertised and stated that the Lights will operate and never need batteries when, in fact, the Lights do not work as represented; the battery does not last indefinitely; the LED panels do not last as promised; the bulbs do not last as represented; and the Ever Brite Lights have a defect that can cause them to burst into flames.

131.   By its actions, Defendant has and continues to disseminate uniform

false advertising concerning the Lights, which advertisements, by their nature, are unfair, deceptive, untrue, or misleading within the meaning of the FAL. Such advertisements are likely to deceive, and continue to deceive, the consuming public for the reasons detailed above.

132. The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have the likelihood to deceive in that Defendant has failed to disclose the true and actual nature of the Lights. Defendant has failed to initiate a public information campaign to alert consumers of the Ever Brite Light's true nature, including their risk of explosion and/or catching on fire, which continues to create a misleading perception of the life, safety and operation of the Lights.

133. In making and disseminating the statements alleged herein, Defendant should have known its advertisements were untrue and misleading, in violation of the FAL. Frost and the California Class members based their decisions to purchase the Lights, in substantial part, on Defendant's misrepresentations and omissions. The revenues to Defendant attributable to the Lights sold using those false and misleading advertisements amount to substantial monies. Frost and the California Class were injured in fact and lost money as a result.

134. Defendant intended for Frost and California Class members to rely on these representations and omissions and Frost and California Class members

consequently did rely on Defendant's misrepresentations and omissions.

135.   The misrepresentations and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising and, therefore, are violations of the FAL.

136.   As a result of Defendant's wrongful conduct, Frost and California Class members request that this Court enjoin Defendant from continuing to violate the FAL.  Such conduct is ongoing and continues to this date.  Frost and the California Class are, therefore, entitled to the relief described below as appropriate for this cause of action.

**COUNT IX**
**Unlawful, Unfair, and Fraudulent Business Practices in Violation of**
**California Business and Professions Code § 17200, *et seq*.**
**<u>On Behalf of the California Class</u>**

137.   Plaintiffs incorporate by reference each and every preceding paragraph as though fully set forth herein.

138.   The UCL defines unfair competition to include any "unfair," "unlawful," or "fraudulent" business act or practice.

139.   Defendant violated, and continues to violate, the UCL by misrepresenting the Lights as working once they are charged and not having to replace batteries and being safe to use, when in fact, the Lights do not work as represented, the battery does not last indefinitely, the LED panels do not last as promised, the bulbs do not last as represented, and the Ever Brite Lights have a defect

that can cause them to burst into flames.

140.   By engaging in the above-described acts and practices, Defendant has committed an unfair business practice within the meaning of the UCL.  Consumers have suffered substantial injury they could not reasonably have avoided other than by not purchasing the Lights.

141.   Defendant's acts and practices have deceived and/or are likely to deceive California Class members and the public and thus constitute a fraudulent business practice.  Defendant uniformly marketed and advertised the Lights despite the fact that Defendant knew, or should have known, of the inoperable and unsafe condition of the Lights, including the fact that the Lights do not work as represented; the battery does not last indefinitely; the LED panels do not last as promised; the bulbs do not last as represented; and the Ever Brite Lights have a defect that can cause them to burst into flames.

142.   As discussed above, Plaintiff and members of the California Class were injured in fact and lost money as a result of such acts of unfair competition.

143.   The injuries suffered by Frost and California Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Frost and California Class members should have or could have reasonably avoided.

144.   Defendant received the funds paid by Frost and the members of the

California Class.  Defendant profited by misrepresenting the properties of the Ever Brite Lights that it otherwise would not have sold.  Defendant's revenues attributable thereto are, thus, directly traceable to the substantial dollars paid out by Frost and the California Class for the Ever Brite Lights.

145.   Unless Defendant is enjoined from continuing to engage in the unlawful, unfair, and fraudulent business acts and practices as described herein, which conduct is ongoing, Frost and the California Class will continue to be injured by Defendant's conduct.

146.   Defendant, through its acts of unfair competition, has acquired money from the California Class members.  Frost and the California Class request this Court to enjoin Defendant from continuing to violate the UCL.

147.   The unlawful, unfair, and fraudulent conduct described herein is ongoing and continues to this date.  Frost and the Class, therefore, are entitled to relief described below as appropriate for this cause of action.

**COUNT X**
**Violation Of Song-Beverly Consumer Warranty Act**
**For Breach Of Implied Warranty Of Merchantability**
**(Cal. Civ. Code §§ 1791.1, 1792)**
**(On Behalf of the California Class)**

148.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

149.   Frost and the other California Class members who purchased Ever Brite

Lights in California are "buyers" within the meaning of California Civil Code §
1791(b).

150.   Ever Brite Lights are a "consumer good[ ]" within the meaning of
California Civil Code § 1791(a).

151.   Defendant is a "manufacturer" of Ever Brite Lights within the meaning
of California Civil Code § 1791(j).

152.   Defendant impliedly warranted to Frost and the other California Class
members that the Ever Brite Lights were "merchantable" within the meaning of
California Civil Code §§ 1791.1(a) & 1792. California Civil Code § 1791.1(a) states:

> "Implied warranty of merchantability' or 'implied
> warranty that goods are merchantable' means that the
> consumer goods meet each of the following:
>
> (1)   Pass without objection in the trade under the
> contract description.
>
> (2)   Are fit for the ordinary purposes for which such
> goods are used.
>
> (3)   Are adequately contained, packaged, and labeled.
>
> (4)   Conform to the promises or affirmations of fact
> made on the container or label.

153.   The Ever Brite Light would not pass without objection in the trade
under the description because it is defective and therefor unfit for its ordinary and
intended purpose as a solar powered light.

154.   Ever Brite is not adequately contained, packaged and labeled because

the product containers, packaging and labels represent that Ever Brite "Never Needs Batteries," is motion activated and that the solar panels and LED last at least five years when, in fact, the Ever Brite Light does not and cannot perform as advertised and is unfit for its ordinary and intended use.  The Lights do not work as represented; the battery does not last indefinitely; the LED panels do not last as promised; the bulbs do not last as represented; and the Ever Brite Lights have a defect that can cause them to burst into flames.

155.   For those same reasons, the Ever Brite Light does not conform to the promises or affirmations of fact made on its container or labels.

156.   Defendant's actions, as complained of herein, thus breached the implied warranty of merchantability in violation of California Civil Code §§ 1792 and 1791.1.

157.   Pursuant to California Civil Code §§ 1791.1(d) & 1794, Frost and the other California Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of Ever Brite Lights or the overpayment or diminution in value thereof, as well as costs and attorneys' fees.

## COUNT XI
## Breach of Express Warranty Under California Law
### (On Behalf Of The California Class)

158.   Plaintiffs reallege and incorporate each allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

159.   Defendant is a "merchant" as defined by the relevant statutes.

160.   The Lights are "goods" as defined by the relevant statutes.

161.   As described herein, Ontel expressly warranted that the Light operates as advertised, that it "Never Needs Batteries" and that the solar panels and LEDs will last for at least five years.  That promise served as the basis of the bargain between the parties and therefore constituted an express warranty.

162.   Defendant intended that consumers would rely on those warranties when purchasing the Lights.

163.   On the basis of the representations, Frost and California Class members agreed to purchase the Lights.  An express warranty therefore became part of the basis of the bargain.

164.   Frost and the California Class have performed all conditions, covenants, and promises required on their part to be performed.

165.   The goods Frost and the California Class received did not conform to the express warranty as alleged above, in that the Ever Brite Lights did not operate as advertised and labeled; the battery does not last indefinitely; the LED panels do not last as promised; and the bulbs do not last as represented.

166.   Had Defendant disclosed the truth about the Lights, including that the Lights could catch fire, Frost and California Class members would not have purchased the Lights or not have been willing to pay as much for them.

167.   Defendant has failed to replace the non-conforming goods with goods conforming to Defendant's express warranty as to Frost and the California Class, or to compensate Frost and the California Class.

168.   Defendant received notice of its breach of express warranty through its own knowledge of the safety issues and other problems with the Lights, including from complaints to the Consumer Product Safety Commission and to its own customer service department.

169.   As a direct and proximate result of Defendant's breach of express warranty, Frost and the California Class have been damaged in an amount to be proven at trial.  The precise amount of these damages is unknown at the present time but is in excess of the jurisdictional limits of the Court.

## **PRAYER FOR RELIEF**

Plaintiffs, on behalf of themselves, and the Classes, respectfully request that the Court:

a.   Certify the Classes pursuant to Fed. R. Civ. P. 23 and appoint Plaintiffs and their counsel to represent the Classes pursuant to Fed. R. Civ. P. 23(g);

b.   Award Plaintiffs and the Classes monetary damages as allowable by law;

c.      Award Plaintiffs and the Classes pre-judgment and post-judgment interest as allowable by law;

d.      Award Plaintiffs and the Classes reasonable attorneys' fees and costs as allowable by law;

e.      Award Plaintiffs and the Classes all appropriate equitable relief; and

f.      Award Plaintiffs and the Classes all such further relief as allowable by law and equity.

## <u>JURY TRIAL DEMANDED</u>

Plaintiffs, on behalf of themselves and the Classes, demand a trial by jury on all issues so triable.

Dated:   March 1, 2019                    SHEPHERD, FINKELMAN,
                                          MILLER &  SHAH, LLP

                                          /s/ *James C. Shah*
                                          JAMES C. SHAH
                                          NATALIE FINKELMAN BENNETT
                                          475 White Horse Pike
                                          Collingswood, NJ  08107
                                          Tel: 856-858-1770
                                          Fax: 866-300-7367
                                          jshah@sfmslaw.com
                                          nfinkelman@sfmslaw.com


                                          *Attorneys for Plaintiffs*